IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

KRISTY BEHNKE,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP CORP.,

    Defendants.

Civil Action No. 1:25-cv-188

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

COMES NOW, Plaintiff, Kristy Behnke, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay Long-Term Disability ("LTD") benefits due under employee welfare benefit plans, from Defendants' failure to follow reasonable claims procedures by refusing to make a timely decision on Plaintiff's claim, and for Defendants' other violations of the Employee Retirement Income Security Act of 1974 ("ERISA"):

### JURISDICTION AND VENUE

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq., and the subject Employee Welfare Benefit Plan constitutes a "plan under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor ERISA Claims Procedure Regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for

administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this Court for judicial review.

3. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

4. Plaintiff, Kristy Behnke, was at all relevant times and is currently a resident of Outagamie County, Wisconsin.

5. Defendant Unum Life Insurance Company of America ("Unum Life") is the underwriter of group LTD insurance policy number 960062-001, issued to Plaintiff's former employer, Pinnacle Financial Advisors ("Pinnacle"), and is the party obligated to pay benefits and determine eligibility for LTD benefits under the LTD Plan.

6. Upon information and belief, Unum Life is an insurance company authorized to transact the business of insurance in this state and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243-1131.

7. Defendant Unum Group Corporation ("Unum Group") is the parent company of Defendant Unum Life.

8. Defendant Unum Group exercises significant control over the policies and actions of Defendant Unum Life.

9. Defendant Unum Group is the employer of all persons who acted on behalf of Unum Life.

10. Defendant Unum Group may be served with process by and through its registered agent for service, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

# FACTS

11.  Ms. Behnke was employed by Pinnacle as a Practice Support Associate.

12.  Pinnacle maintained an LTD benefits plan (the "LTD Plan") for the benefit of its employees.

13.  LTD benefits under the LTD Plan are funded by Unum Life Policy No. 960062-001.

14.  Ms. Behnke is a participant or beneficiary of the LTD Plan and is covered by the policy providing LTD benefits.

15.  Ms. Behnke became disabled and unable to work in April 2024, while covered under the plan, because of impairments caused by and related to her diagnoses of psoriatic arthritis, pulmonary hypertension, and congestive heart failure.

16.  Ms. Behnke has been and continues to be disabled as defined by the provisions of the LTD Plan.

17.  Ms. Behnke timely filed applications for LTD benefits under the LTD Plan.

18.  Defendants denied Plaintiff's claim for LTD benefits by letter dated August 2, 2024, based on the conclusory opinions of two medical consultants that she was not precluded from performing her own occupation.

19.  By letter dated January 29, 2025, Ms. Behnke timely appealed the denial of her LTD claim and provided Defendants with substantial evidence confirming her physical conditions continued to disable her from performing the duties of any occupation, including her own.

20.  Plaintiff's evidence included updated treatment notes and medical narratives from her treating providers, the results of an objectively valid functional capacity evaluation ("FCE"),

and a vocational analysis confirming Ms. Behnke's medically supported restrictions and limitations would preclude gainful employment in any occupation.

21. In her appeal letter, Ms. Behnke also confirmed that, under the Department of Labor's ERISA Claims Procedure Regulations, Defendants had 45 days (or until March 15, 2025) to issue a decision on Ms. Behnke's LTD claim or provide a regulatorily compliant notice of extension.

22. As ERISA fiduciaries, Defendants had until March 15, 2025—forty-five (45) days from January 29, 2025—to render a decision on Plaintiff's appeal or provide Plaintiff with a written notice of extension identifying special circumstances necessitating an extension of time to finish their review. *See* 29 C.F.R. § 2560.503-1(i)(1)(i) &(3)(i).

23. By letter dated February 18, 2025, Plaintiff submitted additional evidence supporting her appeal and substantiating her entitlement to disability benefits under the LTD Plan.

24. Plaintiff's February letter reminded Defendants that their deadline to render a decision or provide a regulatorily compliant notice of extension was March 15, 2025.

25. During its appeal review, Defendants retained Dr. Neal Greenstein, a physician board-certified in internal medicine, who reviewed Ms. Behnke's medical evidence and concluded there were no medically supported restrictions and limitations. Defendants provided a copy of Greenstein's report to Ms. Behnke on March 17, 2025, and allowed her an opportunity to respond.

26. Plaintiff responded on April 1, 2025, and raised several issues with Greenstein's review and report, including that Greenstein did not have the appropriate specialty to evaluate

her conditions and that his opinions were contradicted by the medical evidence in Defendants' possession.

27. Plaintiff also notified Defendants that Greenstein's report was comprised mostly of boilerplate and formulaic language superficially supporting denial and that Greenstein had concurrently authored nearly identical reports for Defendants to support the denial of multiple other LTD claimants.

28. Plaintiff also submitted a Notice of Award from the Social Security Administration ("SSA") confirming SSA found her disabled as of March 2024 and approved her for Social Security Disability Insurance ("SSDI") benefits effective September 2024.

29. Upon receiving Plaintiff's response, Defendants asked Plaintiff to complete and return a signed authorization permitting Defendants to obtain a copy of her SSA claim file and noted that they were exercising the 45-day extension permitted under the Department of Labor's ERISA Claims Procedure Regulations.

30. Plaintiff completed and sent Defendants the SSA authorization form on April 21, 2025, and confirmed that, under the Department of Labor's ERISA Claims Procedure Regulations, Defendants decision deadline was extended to June 5, 2025 (which is 45-days following Plaintiff's submission of the requested information).

31. By letter dated May 7, 2025, Defendants confirmed they requested a copy of Plaintiff's SSA file on April 23, 2025, and were still waiting to receive a response from SSA.

32. By letter dated June 2, 2025, Plaintiff reminded Defendants that the deadline to make a decision on her appeal was June 5, 2025, and asked Defendants to provide a timely decision by or before that date as required by the Department of Labor's ERISA Claims Procedure Regulations.

33. On June 5, 2025, Unum informed Plaintiff that it would not make a decision on her appeal until June 19, 2025, and asserted its decision deadline was tolled under the regulations.

34. To date, Defendants have still not made a decision on Plaintiff's claim and over ninety days have passed since she submitted her written appeal on January 29, 2025.

35. In the context of the 45-day extension of the appeal review period, the Department of Labor's ERISA Claims Procedure Regulations confirm "[i]n no event shall such extension exceed a period of [45] days from the end of the initial [review] period." *See* 29 C.F.R. § 2560.503-1(i)(1)(i) &(3)(i).

36. The Department of Labor's ERISA Claims Procedure Regulations state that ERISA administrators can toll and extend their decision deadline beyond the maximum 90-day period only when the need for additional time is "due to a claimant's failure to submit information necessary to decide a claim." *See* 29 C.F.R. § 2560.503-1(i)(4).

37. Defendants did not and cannot assert their failure to make a timely decision was due to Ms. Behnke's failure to submit information necessary to decide her LTD claim, and therefore the tolling contemplated under 29 C.F.R. § 2560.503-1(i)(4) is inapplicable.

38. Defendants failed to make a decision within the maximum 90-day period required by the Department of Labor's ERISA Claims Procedure Regulations.

39. As a result, Defendants have failed to provide a reasonable claims procedure that would yield a timely decision on the merits of Ms. Behnke's LTD claim.

40. 29 C.F.R. § 2560.503-1(l) states that an ERISA administrator's failure to strictly adhere to all requirements of the Department of Labor's ERISA Claims Procedure Regulations

with respect to a claim will result in the claimant being deemed denied without the exercise of discretion. *See* 29 C.F.R. § 2560.503-1 (1)-(2).

41. Accordingly, under 29 C.F.R. § 2560.503-1 (1)-(2), Plaintiff pursues her available remedies under § 502(a) of the ERISA on the basis that Defendants have failed to provide a reasonable claims procedure that would yield a timely decision on the merits of the LTD claim.

42. Plaintiff's administrative remedies under the LTD Plan were deemed exhausted without the exercise of discretion because of Defendants' violations of 29 C.F.R. § 2560.503-1 as outlined above.

43. Upon information and belief, the LTD Plan does not contain an appropriate grant of discretion to Defendants and therefore the *de novo* standard of review will apply to the Court's review of Plaintiff's claims.

44. The entities that made the decisions to deny benefits would pay any benefits due out of their own funds.

45. The entities that made the decisions to deny benefits were under a perpetual conflict of interest because the benefits would have been paid out of their own funds.

46. The entities that made the decisions to deny benefits allowed their concern over their own funds to influence their decision-making.

47. Defendants' conflict of interest and bias is evident in the fact that it establishes monthly financial targets that encourage and incentivize its claims handlers to terminate a specified number of claims every month.

48. The monthly financial targets for denying claims are called "recovery plans," "recovery guidance," or words to that effect, and are provided by Unum's finance department to Unum's Assistant Vice Presidents and Directors who supervise and conduct claims handling.

49. The monthly targets, or "recovery plans," include the count of total claims that should be recovered.

50. Internal documents reveal that financial targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (i.e., denying an open claim) per day. (See Exhibit 1, Weekly Tracking Reports).

51. To receive bonuses under Unum's incentive program, Unum employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (*See* e.g., Exhibit 2, ID Director Scorecards).

52. Plaintiff's counsel took the deposition of the Assistant Vice President, Marianne Justin, who was a Unum AVP similarly situated to the AVP overseeing the Director and the DBS who evaluated Plaintiff's claim. Ms. Justin confirmed that she received "financial guidance" each month. (*See* Exhibit 3, selected excerpts from the Deposition of Marianne Justin, p. 47:23-51:6).

53. Ms. Justin also received a Weekly Tracking Report each Monday that contained new financial target numbers for her team. *Id.* at, 103:11-18. Ms. Justin explained that she shares the Weekly Tracking Reports with her team in weekly meetings each Tuesday. *Id.* at, 80:13-82-21; 99:15-100:22.

54. Directors in AVP Justin's team are expected to be familiar with how the Weekly Tracking Reports are formatted, how they work, and what their data means for their team. *Id.* at, 103:11-105:9.

55. AVP Justin confirmed that whether Unum's AVPs meet the financial metrics is part of their performance evaluation. *Id.* at, 136:9-16.

56. Ms. Justin provided additional testimony and referred to additional documents that are relevant to Unum's conflict of interest, but that testimony and evidence is currently designated "confidential."

57. Defendants targeted Plaintiff's claims for termination to meet their financial goals.

58. Defendants' targeting of Plaintiff's claims for denial taints all evidence they developed during the review of her claims as the review was designed to result in a denial, not an impartial weighing of the evidence.

59. Unum relied on the opinions of its in-house doctors and hired physicians to deny Plaintiff's claims, each of which evaluated only the paper medical records and none of which personally examined her.

60. Relying on in-house or retained paper reviewers is in keeping with Unum's standard practice, as it excessively relies on the opinions of its retained doctors in deciding all of its claims.

61. When asked to perform a written review of a claim, Unum's in-house and hired doctors overwhelmingly conclude that claimants do not have restrictions and limitations preventing them from working.

62. When Unum's in-house or hired doctors disagree with a claimant's treating providers, Unum credits their doctors every single time, without exception, no matter how many treating doctors support the claim, the specialty of the supportive doctors, or the relative feebleness of the opinions given by their doctors.

63. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to benefit claims.

64. Defendants' decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of her claims.

65. Defendants' decision-making process violated the terms of the applicable ERISA Plans and ERISA law and regulations.

66. Defendants' decision to deny benefits was wrong under the terms of the LTD Plan and ERISA, and was arbitrary and capricious.

## FIRST CAUSE OF ACTION
## FOR PLAN BENEFITS AGAINST THE DEFENDANTS
## PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

Plaintiff incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

67. Under the terms of the LTD Plan, Defendants agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the LTD Plan.

68. Plaintiff is disabled and entitled to benefits under the terms of the LTD Plan.

69. Defendants failed to provide LTD benefits due under the terms of the LTD Plan, and these failures constitute breaches of the LTD Plan.

70. The decision to terminate LTD benefits was wrong under the terms of the LTD Plan.

71. The decision to terminate LTD benefits and decision-making processes were arbitrary and capricious.

72. The decision to deny LTD benefits is not supported by substantial evidence in the record.

73. Defendants' failure to make a timely decision on Plaintiff's claim despite possessing all information to support it since April 7, 2025, was arbitrary and capricious.

74. The decision to deny benefits and the failure to make a timely decision were influenced by Defendants' financial conflict of interest.

75. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide LTD benefits for Plaintiff's disability or provide a reasonable claims procedure, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the LTD Plan.

76. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide LTD benefits for Plaintiff's disability or provide a reasonable claims procedure, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her the following relief in this case:

**On Plaintiff's First Cause of Action**:

77. A finding in favor of Plaintiff against Defendants;

78. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

79. Prejudgment and post-judgment interest;

80. An Order requiring the LTD Plan or appropriate Plan fiduciary to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the LTD Plan.

81. An Order requiring the LTD Plan or appropriate Plan fiduciary to provide Plaintiff with any other employment benefits to which she would be entitled pursuant to a finding that she is disabled under the LTD Plan or under any other employee welfare benefit

plan;

82. Plaintiff's reasonable attorney fees and costs; and

83. Such other relief as this court deems just and proper.

Plaintiff further requests that the Court order Defendants to provide Plaintiff with a bound copy of the ERISA record consecutively paginated.

Dated this 12th day of June 2025.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF

BY: /s Noah A. Breazeale
Noah A. Breazeale (TN BPR 037152)
414 McCallie Avenue
Chattanooga TN 37402
(423) 634-2506
FAX: (423) 634-2505
nbreazeale@buchanandisability.org.